NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2015 VT 134

No. 2015-136

| Christos Panagiotidis and Hrisanthi Panagiotidis | Supreme Court |
| --- | --- |
| | |
| | On Appeal from |
| v. | Superior Court, Windsor Unit, |
| | Civil Division |
| | |
| Alexander Galanis | September Term, 2015 |

Theresa S. DiMauro, J. (final judgment); Harold E. Eaton, Jr., J. (partial judgment)

Cabot Teachout of DesMeules, Olmstead & Ostler, Norwich, for Plaintiffs-Appellees.

Lisa A. Wellman-Ally, Claremont, New Hampshire, for Defendant-Appellant.


PRESENT: Reiber, C.J., Dooley, Skoglund and Robinson, JJ., and Morse, J. (Ret.), Specially Assigned


¶ 1.  **SKOGLUND, J.**  Defendant appeals from the trial court's order granting judgment to plaintiffs on their complaint for ejectment and damages. We affirm.

¶ 2.  Plaintiffs own a building, with a mortgage, in Hartford, Vermont, where they operated a pizza business. In 2013, they sold the pizza business to defendant and leased him the premises. In November 2013, plaintiffs brought an eviction action, asserting that defendant had failed to pay rent. The court granted plaintiffs a default judgment and a writ of possession in December 2013. The court subsequently granted defendant's request to vacate the default judgment and stay the writ of possession. Defendant then filed an answer and a counterclaim. In his counterclaim, defendant argued that he was fraudulently induced into entering into the lease

agreement and that the lease should be declared void. Alternatively, defendant argued that he had cured any breach of the lease by paying money into an escrow fund.

¶ 3. Following a final hearing, the trial court granted judgment to plaintiffs on their ejectment claim and on defendant's counterclaim. The court made the following relevant findings. The parties entered into a written lease agreement in March 2013. The lease required a monthly rental payment of $2200 for five years. Defendant paid rent from March 2013 until October 2013. Defendant became dissatisfied with his purchase of the pizza business. He sent a letter to plaintiffs through his attorney on August 29, 2013, seeking to renegotiate the purchase of the pizza business. This dissatisfaction apparently triggered defendant's decision to pay rent into an escrow account at his attorney's office. Plaintiffs did not agree to defendant's unilateral decision and brought this ejectment action. For several months, defendant made payments into his attorney's trust account. The funds were held there until March 2014, when the parties agreed that rent could be paid into court and disbursed to the mortgagee. The funds held by the attorney were disbursed through to the mortgagee in this manner as well. Defendant did not pay any interest or court costs to cure his alleged breach. During the time that the funds were being held in escrow, plaintiffs became delinquent on their mortgage concerning the building.

¶ 4. Based on these and other findings, the court concluded that the lease agreement between the parties was valid and enforceable and that defendant breached the lease by failing to pay rent. While defendant had the right to cure a breach for nonpayment of rent, see 12 V.S.A. § 4773, he was required to pay all unpaid rents, interest, and court costs to rely on this statutory right to redeem. Defendant had paid the past-due rent, but he had not paid interests or plaintiffs' costs. The court noted that the lease also provided a separate contractual right to cure that did not require the payment of interest and costs, and was not confined to nonpayment breaches. This right, however, had to be exercised within ten days of written notice of the breach. The court found that plaintiffs brought their ejectment claim in November 2013 and provided

2

defendant with written notice of the claimed nonpayment breach at that time. Money was not paid into the court through the agreement of counsel until March 2014, well outside the ten-day lease provision.

¶ 5. The court agreed with defendant that a lease must be terminated in accordance with its terms. In this case, the lease required that written notice of the breach be given, and it allowed the breaching party ten days to cure the breach after receiving such notice. In a separate provision, the lease stated that any notices required to be given under the lease "shall be deemed to be given when deposited in the United States Mail, postage prepaid, via certified mail, with return receipt requested," to certain specified addresses. The lease did not require that written notices be provided exclusively by mail; it stated only that notices were effective when given in the manner specified in the lease. The court found this significant. In this case, the written notice was provided by personal service, which exceeded that which was permissible under the lease. While a lesser means of service would have been adequate under the lease, the court concluded, it did not follow that a more effective means of service was prohibited. The court thus granted judgment to plaintiffs on defendant's counterclaim and on their request for possession of the leased premises due to defendant's breach. Following a hearing and an order on damages, this appeal followed.

¶ 6. Defendant first argues that the court erred in finding that plaintiffs provided him notice that he breached the parties' agreement. According to defendant, plaintiffs were obligated to notify him of the breach by certified mail as stated in the lease and notice by personal service was insufficient.

¶ 7. As the trial court recognized, we have held that "when a lease expresses an agreement with regard to notice of termination, the time, mode and manner of such notice must conform to the agreement." Deschenes v. Congel, 149 Vt. 579, 583, 547 A.2d 1344, 1346 (1988) (citing Archambault v. Casellini-Venable Corp., 115 Vt. 30, 32, 49 A.2d 557, 558 (1946),

3

and Roy's Orthopedic, Inc. v. Lavigne, 145 Vt. 324, 326, 487 A.2d 173, 175 (1985) (recognizing that law presumes that parties intend to be bound by plain and express language of agreement)). In Deschenes, we concluded that a lessee's notice of termination of a lease was ineffective because the lease required him to give thirty days written notice to the lessor and pay rent to the lessor through the date of termination, and the lessee failed to comply with the latter requirement. 149 Vt. at 583, 547 A.2d at 1347. In a similar vein, a lease in Vermont Small Business Development Corp. v. Fifth Son Corp. required the lessor to "specify the occurrence giving rise to the Event of Default," and to specify the date of termination. 2013 VT 7, ¶ 16, 193 Vt. 185, 67 A.3d 241 (brackets omitted). The lessor failed to comply with both requirements, and thus, the termination notice was defective. To the same effect is Archambault. There, the plaintiff failed to give a three-month notice to vacate as required by the lease, and the notice that was provided was indefinite in its terms. We found it self-evident that the notice of termination was ineffective, explaining that "[w]hen a lease expresses an agreement for notice, the time, mode and manner must conform to it." Archambault, 115 Vt. at 32, 49 A.2d at 558.

¶ 8. We are faced with a different situation here. As set forth above, the lease here gives a party ten days "to cure a breach of this Agreement after written notice of such breach from the other party." The lease further states that notice would be "deemed to be given" when a certain method of notice—depositing the written notice in the mail via certified mail, return receipt requested—was employed. As the trial court found, the written notice here, delivered by personal service, was a form of notice at least as effective, and actually more certain, than that provided in the lease. Personal service of plaintiffs' complaint ensured that defendant knew, in writing, of the alleged breach, which triggered the ten-day cure period. The purpose of the written-notice requirement was to trigger the ten-day cure period. That purpose was clearly

4

satisfied, and we would be undermining the obvious intent underlying this provision to hold otherwise.[*]

¶ 9.     In reaching our conclusion, we note that this case is not like In re Soon Kwon, 2011 VT 26, 189 Vt. 598, 19 A.3d 139 (mem.), where we considered a statute that required a particular form of service, and the statute at issue was a consumer-protection provision that aimed to ensure the expeditious return of tenants' security deposits.  It is true that, citing In re Soon Kwon, we stated in Vermont Small Business Development Corp. that "[t]here is no reason to require less 'punctilious compliance' with terms of a lease providing for notice in the nonresidential context."  2013 VT 7, ¶ 15.  This statement was overly broad, however, and must be limited to the context in which it arose.  The omissions in the notice provided in Vermont Small Business Development Corp. were substantive omissions, and not a dispute over the form in which notice was delivered.  See id. ¶ 16 (holding that notice of default was ineffective where landlord failed to specify occurrence giving rise to event of default, and failed to provide date on which agreement would be terminated, both of which were required by lease).  We did not intend to suggest that, in a nonresidential context, we would refuse to accept a form of notice that is at least as effective, and actually more certain, than that provided in the lease.

¶ 10.     We thus turn to defendant's remaining argument.  According to defendant, the court erred in finding that he breached the terms of the lease agreement.  He argues that he was entitled to pay rent into an escrow account and later into court.  Even if he did breach the lease, defendant continues, he cured the breach by paying rent into court.

---

[*]  Defendant argues that the manner in which the notice was delivered does not comply with the requirements of the lease.  He does not challenge the trial court's underlying assumption that a complaint in a lawsuit that alleged the breach can satisfy the contractual notice requirement, triggering the ten-day opportunity to cure.  Accordingly, we consider only the question of whether notice to defendant by personal service, rather than by certified mail, is sufficient to satisfy plaintiffs' contractual obligation to provide notice and an opportunity to cure. We assume for the purposes of this case only, but do not decide, that the notice provided by the complaint can satisfy the contractual notice requirement.

¶ 11.   As set forth above, the trial court found nothing in the lease that would allow defendant to pay rent into his attorney's escrow account, rather than to plaintiffs directly.  We agree.  The lease specifically required defendant to pay the rent to plaintiffs at their Vermont address unless plaintiffs designated another address.  Defendant argues that, even if this is so, he was allowed to pay rent into court.  This may be true, but defendant did not begin paying rent into court until March 2014, well after the breach at issue occurred.  The trial court found that defendant did not cure any breach for nonpayment of rent because he failed to pay interest and court costs as required by law.  See 12 V.S.A. § 4773 ("Before a writ of possession is executed, if the defendant pays into court all rent due through the end of the current rental period, including interest and the costs of suit, the action shall be discontinued.").  Indeed, defendant does not argue otherwise on appeal.  We find no error in the court's decision.

Affirmed.

FOR THE COURT:

_____
Associate Justice